Paul Sweeney
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

FEDERAL INSURANCE CO.,

                       Plaintiff,

           v.

C. BURT DUREN, R. CAREY JOHNSON,
THOMAS R. KELLY, H. DANE REYNOLDS
LEONARD M. SNYDER and JOHN DOES 1-
50,

                    Defendants.

---------------------------------------------------------------------x

Case No.

**COMPLAINT**

        Plaintiff Federal Insurance Co. ("Federal"), through its undersigned counsel, hereby asserts this Complaint against defendants C. Burt Duren ("Duren), R. Carey Johnson ("Johnson"), Thomas R. Kelly ("Kelly"), H. Dane Reynolds ("Reynolds"), Leonard M. Snyder ("Snyder") and John Does 1-50, and states as follows:

## INTRODUCTION

        1.    This action concerns Executive Protection Policy No. 8139-1130 (the "Pre-Acquisition Policy") and Executive Protection Portfolio Policy No. 8171-5980 (the "Post-Acquisition Policy") issued by Federal to One Price Clothing Stores, Inc. ("One Price"). In connection with the applications for both policies, Federal relied on One Price's representations that it had millions of dollars of funding available to it under a crucial credit facility and was in compliance with its

covenants under that facility.  Those representations were false.  An internal One Price report reveals that, at the time of the applications, One Price obtained funding under the credit facility by falsifying inventory reports to its lenders; that One Price was in default of its covenants under the facility; and that One Price therefore had no right to any funding under the facility.  The false representations and omissions in the applications regarding One Price's credit facility and other aspects of its financial condition and operations render the Policies void ab initio as to defendants.  Accordingly, Federal seeks a judgment declaring that it is entitled to rescind the policies as to defendants.  Subject to and without waiver of its right to rescind the Policies as to defendants, Federal also seeks a declaration that certain matters for which defendants have requested coverage are not covered by the policies in any event.

## PARTIES

2.     Federal is an insurance company organized under the laws of Indiana with a principal place of business in New Jersey.

3.     Duren, upon information and belief, is a resident of South Carolina and served as the Vice President and Treasurer and as Chief Financial Officer of One Price.

4.     Johnson, upon information and belief, is a resident of South Carolina and served as Controller of One Price.

5.     Kelly, upon information and belief, is a resident of South Carolina and served as the Senior Vice President of Marketing of One Price.

6.     Reynolds, upon information and belief, is a resident of North Carolina and served as the Senior Vice President and CFO of One Price.

7.     Snyder, upon information and belief, is a resident of Arizona and served as the Chairman and CEO of One Price.

8.     John Does 1-50 are any and all persons, other than the above named defendants, who are Insured Persons under the Pre-Acquisition Policy or the Post-Acquisition Policy and who have requested coverage under either policy or have been named as a defendant or respondent in any matter of which notice has been or may be given under either policy.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1332(a)(1) and 2201(a).   Federal and defendants are of diverse citizenship, and the amount in controversy exceeds $75,000.

10.     This Court has personal jurisdiction over each of the defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A); and N.Y. C.P.L.R. §§ 302(a)(1), 302(a)(2)and 302(a)(3).  Each of the defendants or their agents have transacted business within, or committed acts within, or acts causing injury within, this state from which this action arises.  In particular, and without limitation, the application for the policies and other information containing misrepresentations and omissions were delivered or communicated to Federal at its offices in New York, and Federal acted on the application and other information in conducting the underwriting for the policies at its New York offices.

11.     Venue lies in this federal district pursuant to 28 U.S.C. § 1391(a).  A substantial part of the events or omissions giving rise to this action occurred in this judicial district.   Federal conducted the underwriting for the policies and issued the policies out of its New York offices.

## FACTS

### The Misrepresentation of One Price Inventory Figures

12.     One Price operated a nationwide chain of discount clothing stores.

13.     At all relevant times, One Price's ability to continue operating was largely or entirely dependent on the availability of continued funding under a credit facility issued to One Price by Congress Financial Corporation ("Congress Financial"). The maximum amount available for borrowing under the credit facility was $37.5 million until September 2002, when that amount was raised to $40 million.

14.     On information and belief, the amount available for funding under the Congress Financial credit facility at any particular time depended on the current value of One Price's inventory. One Price sent Congress Financial and other lenders periodic reports setting forth the value of One Price's inventory (the "inventory reports").

15.     In the later part of 2002, according to an internal One Price report (the "One Price Report"), certain officers and employees began to inflate the value of One Price's inventory in the inventory reports in a deliberate effort to overstate the amount available for borrowing under the credit facility. The One Price Report indicates that, as a result, One Price obtained substantial funding under the credit facility to which it was not entitled.

16.     According to the One Price Report, One Price inflated its reported inventory levels by including merchandise which had been ordered by One Price but not yet shipped, including merchandise that was subject to credit holds imposed by the vendors. One Price reported such merchandise as "In-Transit Inventory" — i.e., merchandise that had been shipped by the vendor but not yet received by one Price. On information and belief, merchandise that had not yet shipped did not qualify as "In-Transit Inventory" for purposes of the credit facility and could not properly be reported as inventory on One Price's financial statements.

17.     The One Price Report indicates that Duren was principally responsible for overstating One Price's inventory levels and states that Duren

admitted that, "in the late fiscal quarter of 2002," One Price began "inflating the In-Transit Inventory." According to the Report, Duren stated that Reynolds, Johnson and Kelly also "were actively involved in the process of overstating In-Transit Inventory" and that Snyder "directed the activity." Duren stated, according to the Report, that he and the others involved had "deliberately hidden the matter from others within the company who would not have permitted the practice."

18.     The One Price Report states that, as a result of the deliberate inflation of inventory levels, the In-Transit Inventory reported to One Price lenders was overstated in the following amounts from the quarter ending November 2, 2002, through the quarter ending November 1, 2003:

| Qtr. Ended | Reported | Actual | Overstatement | |
|---|---|---|---|---|
| 11/1/2002 | $11,375,379 | $6,129,171 | $5,246,208 | (46%) |
| 2/1/2003 | $16,484,840 | $9,146,332 | $7,338,508 | (45%) |
| 5/3/2003 | $12,896,451 | $7,168,071 | $5,728,380 | (44%) |
| 8/2/2003 | $12,571,265 | $4,762,373 | $7,808,892 | (62%) |
| 11/1/2003 | $14,101,528 | $5,471,285 | $8,630,243 | (61%) |

19.     According to the One Price Report, the inflation of inventory and related improprieties violated One Price's covenants and constituted a default under the Congress Financial credit facility and therefore precluded One Price from obtaining additional funding under the facility. As a result, according to the One Price Report, and on information and belief, the following representations regarding the credit facility in One Price's quarterly and annual financial statements were false:

       a.    The representation in One Price's Form 10-Q for the quarter ending November 2, 2002, filed December 17, 2002 (the "December 2002 10-Q"), that One Price "had approximately $2.1 million excess availability" under the credit facility;

       b.    The representation in One Price's Form 10-K for the fiscal year ending February 1, 2003, filed May 23, 2003 (the

"May 2003 10-K"), that One Price "had approximately $2.6 million excess availability" under the credit facility;

c.    The representation in One Price's Form 10-Q for the quarter ending May 3, 2003, filed June 23, 2003 (the "June 2003 10-Q"), that One Price "had approximately $2.4 million excess availability" under the credit facility; and

d.    The representation in each of the foregoing statements that One Price was in compliance with its covenants under the credit facility.

20.    The One Price Report further concludes that, in addition to the overstatement of inventory in the reports to lenders, the inflation of inventory led to an overstatement of the inventory value reflected in One Price's published financial statements, including a $2.7 million overstatement of the inventory reported for the quarter ending May 3, 2003.   On information and belief, as a result of the overstatement of inventory in its financial statements, One Price's Form 10-Q for that quarter, filed June 23, 2003, as well as other publicly filed One Price financial statements, misrepresented the true value of One Price's inventory.

**The Policies**

The Pre-Acquisition Policy

21.    Federal issued the Pre-Acquisition Policy effective January 31, 2003, based on various information submitted by One Price, including a written application (the "Application"), dated November 7, 2002, signed by One Price Vice President and Treasurer Burt Duren.

22.    Section   14   of   the   Application,   entitled   "Prior Knowledge/Warranty," states in pertinent part:

> **It is important that you fill in the blank in this paragraph.** No Person proposed for coverage is aware of any facts or circumstances which he or she has reason to suppose might give rise to a future claim

that would fall within the scope of the proposed coverage, except: **(If no exceptions, please state.)** _____

**It is agreed that if such facts or circumstances exist, whether or not disclosed, any claim arising from them is excluded from this proposed coverage.**

One Price answered Section 14 by inserting "No Exceptions" in the blank.

23.     One Price's response to Section 14 was false.  Contrary to that response, One Price's deliberate overstatement of inventory levels constituted "facts or circumstances" which Duren and others had "reason to suppose might give rise to a future claim" under the Pre-Acquisition Policy.

24.     The Application required One Price to attach its latest SEC filings.  In response, One Price submitted to Federal, <u>inter alia</u>, its 10-Q for the quarter ended August 3, 2002, filed September 16, 2002 (the "September 2002 10-Q").  The September 2002 10-Q, which was signed and certified by Reynolds and Snyder, stated that the company was in compliance with its credit covenants and had $3 million available under its revolving facility.

25.     Those statements in the September 2002 10-Q were false or misleading and omitted material information.  According to the One Price Report, at the time One Price submitted the September 2002 10-Q to Federal, and at the time the Pre-Acquisition Policy incepted on January 31, 2003, One Price had violated its covenants under the credit facility and had no amount available for borrowing under the facility.

26.     In connection with the Application, Federal underwriter Karen Mahoney convened a conference call with One Price representatives, including Duren, Reynolds and Snyder, on December 10, 2002.  During the call, One Price represented to Mahoney that the company was in compliance with its covenants under the revolving credit facility and that there were significant amounts available for borrowing under the facility.

27.    Those representations made during the December 10, 2002 conference call were false. According to the Report, the intentional overstatement of inventory, which had begun long before the December 10 call, violated multiple covenants in the credit facility, constituted a default under the facility and barred One Price from obtaining any additional funding under the facility.

28.    On information and belief, One Price also omitted material information in connection with the Application by failing to disclose the deliberate overstatement of inventory and resulting credit facility default prior to the January 31, 2003 inception of the Policy.  At all relevant times, defendants had an affirmative duty to disclose such information to Federal in connection with the Application.

29.    On information and belief, Duren, Johnson, Kelly, Reynolds, Snyder and John Does 1-50 each made, participated in making or had actual knowledge of the untruths, misrepresentations and omissions set forth above in connection with the Application.

30.    Each of the untruths, misrepresentations and omissions described above was material to Federal's decision to issue the Policy.  If One Price had provided true and accurate information regarding One Price's deliberate overstatement of its inventory levels, its default under the revolving credit facility and the lack of any available funding under the facility, Federal would not have issued the Policy.

31.    Section 17 of the Pre-Acquisition Policy provides:

> In granting coverage to any one of the **Insureds**, the Company has relied upon the declarations and statements in the written application for this coverage section . . . All such declarations and statements are the basis of such coverage and shall be considered as incorporated in and constituting part of this coverage section.

Such written application(s) for coverage shall be construed as a separate application for coverage by each of the **Insured Persons**. With respect to the declarations and statements contained in such written application(s) for coverage, no statement in the application or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of determining if coverage is available.

The Post-Acquisition Policy

32.    The Pre-Acquisition Policy terminated and went into run-off effective June 27, 2003, upon the acquisition of One Price by Sun One Price, LLC ("Sun"). Effective June 27, 2003, Federal issued the Post-Acquisition Policy for the June 27, 2003 to June 27, 2004 Policy Period.

33.    Section 24 of the Post-Acquisition Policy provides:

In issuing this coverage section the Company has relied upon the statements, representations and information in the **Application**. . . .

In the event that any of the statements, representations or information in the **Application** are not true and accurate, this coverage section shall be void with respect to (i) any **Insured** who knew as of the effective date of the **Application** the facts that were not truthfully and accurate disclosed (whether or not the **Insured** knew of such untruthful disclosure in the **Application**) or to whom knowledge of such facts is imputed, and (ii) the **Organization** under Insuring Clause 2 to the extent it indemnifies an **Insured Person** who had such actual or imputed knowledge.  For purposes of the preceding sentence:

(a) the knowledge of any **Insured Person** who is a past, present or future chief financial officer, in-house general counsel, chief executive officer, president or chairperson of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**;

(b) the knowledge of the person(s) who signed the **Application** for this coverage section shall be imputed to all of the **Insureds**; and

(c) except as provided in (a) above, the knowledge of an **Insured Person** who did not sign the **Application** shall not be imputed to any other **Insured**.

34.     The Post-Acquisition Policy defines **Application** as follows:

**Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this coverage section or for any coverage section or policy of which this coverage section is a direct or indirect renewal or replacement.

**Application** shall also include, for each **Organization**, all of the following documents whether or not submitted with or attached to any such signed application:  (i) the Annual Report (including financial statements) last issued to shareholders before this policy's inception date; (ii) the report last filed with the Securities and Exchange Commission on Form 10-K before this policy's inception date; (iii) the report last filed with the Securities and Exchange Commission on Form 10-Q before this policy's inception date; and [other specified SEC filings].  All such applications, attachments, materials and other documents are deemed attached to, incorporated into and made a part of this coverage section.

35.     Under the foregoing provisions of the Post-Acquisition Policy all of the false statements and omissions described in paragraphs 22 through 28 above in connection with the Application for the Pre-Acquisition Policy also constituted false statements and omissions in connection with the Application for the Post-Acquisition Policy.

36.     The Application for the Post-Acquisition Policy also included the May 2003 10-K and the June 2003 10-Q, because those were the "last" 10-K and 10-Q, respectively, filed by One Price prior to the inception of the Post-Acquisition Policy.  The statements in those filings regarding the One Price credit facility were false for the reasons set forth in paragraphs 19 and 20 above.

37.     On information and belief, Duren, Johnson, Kelly, Reynolds, Snyder and John Does 1-50 each made, participated in making or had actual knowledge of the untruths, misrepresentations and omissions set forth above in connection with the Application for the Post-Acquisition Policy.

38.     Under Section 24 of the Post-Acquisition Policy, the knowledge of Duren and any other person who signed the Application is imputed to all Insureds.

39.     Each of the untruths, misrepresentations and omissions described above was material to Federal's decision to issue the Policy.  If One Price had provided true and accurate information regarding One Price's deliberate overstatement of its inventory levels, its default under the revolving credit facility and the lack of any available funding under the facility Federal would not have issued the Policy.

**Subsequent Events**

40.     On February 9, 2004, One Price filed a Chapter 11 bankruptcy proceeding in the U.S. Bankruptcy Court for the Southern District of New York.

41.     On June 3, 2004, Congress Financial made written demands for damages on some or all of the defendants (the "Congress Financial Demands") based on alleged misrepresentations regarding the value of One Price's inventory and the resulting inflation of the amounts available for borrowing under the credit facility.

42.     On June 23, 2004, Sun filed suit against Snyder, Duren, Kelly and Reynolds in the U.S. District Court for the Southern District of Florida, in an action styled <u>Sun One Price v. C. Burt Duren, et al.</u>, Case No. 04-80575 (S.D. Fla.) (the "Sun Action"), alleging that the defendants defrauded Sun into investing in One Price by making false representations about, <u>inter alia</u>, One Price's inventory levels and credit facility.

43.     On June 25, 2004, the Unsecured Creditors Committee in the One Price bankruptcy proceeding purported to give notice of various potential claims against unidentified current and former One Price directors and officers (the "Creditors Committee Notice").

44.    In or about June 2004, the U.S. Securities and Exchange Commission ("SEC") initiated an investigation, styled <u>In the Matter of One Price Clothing (A-02841)</u> (the "SEC Matter"), into representations by One Price regarding, among other things, its credit facilities.

45.    One or more of defendants has requested coverage in connection with the Congress Financial Demands, the Sun Action, the Creditors Committee Notice and the SEC Matter (the "Underlying Matters").

## CAUSES OF ACTION

### Count I

**(Declaratory Judgment — Rescission of Pre-Acquisition Policy)**

46.    Federal realleges and incorporates by reference herein all of the foregoing allegations.

47.    In connection with One Price's application for the Policy, One Price made false statements of material fact, including without limitation the false statements identified in paragraphs 22 through 28 above.

48.    In connection with One Price's application for the Policy, One Price failed to disclose material information that One Price was under a duty to disclose to Federal, including without limitation the information described in paragraphs 15 through 20 above.

49.    On information and belief, Duren, Johnson, Kelly, Reynolds, Snyder and John Does 1-50 each made, participated in making or had actual knowledge of such misrepresentations and omissions.

50.    To the extent applicable, the untruths, misrepresentations and omissions made in connection with the Application were made knowingly and with intent to deceive.

51. The untruths, misrepresentations and omissions made in connection with One Price's application for the Policy render the Policy void from its inception as to the defendants.

52. Federal hereby tenders return of the premium for the Pre-Acquisition Policy to the full extent that return of the premium is or may be required to effect rescission as to the defendants. To the extent payment of the premium or any portion thereof is deemed a requirement or condition of proceeding with this action, Federal seeks leave to deposit such amount into the registry of the court or to take such other action as the Court may deem appropriate to effect such payment. Any and all conditions precedent to rescission as to the defendants have been satisfied.

53. In the alternative to rescission, Federal is entitled to deny coverage to the defendants with respect to the Underlying Matters based on the misrepresentations and omissions made in connection with the Application.

54. An actual and justiciable controversy exists between Federal and defendants as to whether Federal is entitled to rescind the Pre-Acquisition Policy. Entry of a declaratory judgment is necessary, appropriate and effective to resolve that controversy.

WHEREFORE, Federal prays this Court (a) enter judgment declaring that Federal is entitled to rescind the Pre-Acquisition Policy as to the defendants and that the Policy is void ab initio as to all defendants or, in the alternative, that the misrepresentations and omissions in the application bar coverage under the Policy as to all defendants and (b) grant Federal such other and further relief as the Court may deep appropriate.

## Count II

### (Declaratory Judgment — Rescission of Post-Acquisition Policy)

55.     Federal realleges and incorporates by reference herein all of the foregoing allegations.

56.     In connection with One Price's Application for the Post-Acquisition Policy, One Price made false statements of material fact, including without limitation the false statements identified in paragraphs 22 through 28 and 35 above.

57.     In connection with One Price's application for the Post-Acquisition Policy, One Price concealed material information that One Price was under a duty to disclose to Federal, including without limitation the information described in paragraphs 15 through 20 above.

58.     On information and belief, Duren, Johnson, Kelly, Reynolds, Snyder and John Does 1-50 each made, participated in making or had actual or imputed knowledge of such misrepresentations and omissions.

59.     To the extent applicable, the untruths, misrepresentations and omissions made in connection with the Application were made knowingly and with intent to deceive.

60.     The untruths, misrepresentations and omissions made in connection with One Price's application for the Post-Acquisition Policy render the Policy void from its inception as to the defendants.

61.     Federal hereby tenders return of the premium for the Post-Acquisition Policy to the full extent that return of the premium is or may be required to effect rescission as to the defendants.  To the extent payment of the premium or any portion thereof is deemed a requirement or condition of proceeding with this action, Federal seeks leave to deposit such amount into the registry of the court or to take such other action as the Court may deem appropriate to effect such

payment. Any and all conditions precedent to rescission as to the defendants have been satisfied.

62. In the alternative to rescission, Federal is entitled to deny coverage to the defendants with respect to the Underlying Matters based on the misrepresentations and omissions made in connection with the Application.

63. An actual and justiciable controversy exists between Federal and defendants as to whether Federal is entitled to rescind the Post-Acquisition Policy. Entry of a declaratory judgment is necessary, appropriate and effective to resolve that controversy.

WHEREFORE, Federal prays this Court (a) enter judgment declaring that Federal is entitled to rescind the Post-Acquisition Policy as to the defendants and that the Policy is void ab initio as to all defendants or, in the alternative, that the misrepresentations and omissions in the application bar coverage as to all defendants; and (b) grant Federal such other and further relief as the Court may deep appropriate.

## COUNT III

**(Declaratory Judgment — No Coverage Under Pre-Acquisition Policy)**

64. Federal realleges and incorporates by reference herein all of the foregoing allegations.

65. Subject to and without waiver of Federal's right to rescind, coverage for the Underlying Matters would be barred by one or more terms, conditions, limitations or exclusions of the Pre-Acquisition Policy, including without limitation Section 14 of the Application, which excludes coverage for any **Claim** arising from any facts or circumstances which a proposed insured has reason to suppose might give rise to a future claim.

66. An actual and justiciable controversy exists between Federal and defendants as to whether coverage for the Underlying Matters is barred by one

or more terms, conditions and limitations of the Pre-Acquisition Policy. Entry of a declaratory judgment is necessary, appropriate and effective to resolve that controversy.

WHEREFORE, in the alternative to the relief requested in Count I above, Federal prays this Court (a) enter judgment declaring that the terms, conditions, limitations and exclusions of the Pre-Acquisition Policy bar coverage for the Underlying Matters and (b) grant Federal such other and further relief as the Court may deem appropriate.

### COUNT IV

**(Declaratory Judgment — No Coverage Under Post-Acquisition Policy)**

67.    Federal realleges and incorporates by reference herein all of the foregoing allegations.

68.    Subject to and without waiver of Federal's right to rescind, the Underlying Matters (to the extent they constitute Claims) are all deemed to have been first made during the Pre-Acquisition Policy Period, pursuant to the terms and conditions of the Pre-Acquisition Policy and the Post-Acquisition Policy. As a result, none of the Underlying Matters could trigger coverage under the Post-Acquisition Policy.

69.    Subject to and without waiver of Federal's right to rescind, coverage for Underlying Matters would be barred in any event by one or more of the terms, conditions and limitations of the Post-Acquisition Policy, including without limitation:  Section 14 of the Application for the Pre-Acquisition Policy, which is incorporated by reference in the Post-Acquisition Policy and excludes coverage for any **Claim** arising from any facts or circumstances which a proposed insured has reason to suppose might give rise to a future claim; Endorsement No. 1 to the Post-Acquisition Policy, which excludes coverage for "any **Claim** based upon, arising from, or in consequence of any **Wrongful Act**, committed, attempted, or allegedly

committed or attempted in whole or in part prior to June 27, 2003"; Section 7 of the Post-Acquisition Policy, which excludes coverage for "**Loss** on account of any **Claim** made against any **Insured Person** ... based upon, arising from, or in consequence of: the committing in fact of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person** ... as evidenced by (A) any written or written document by any **Insured**."; and Endorsement No. 6 to the Post-Acquisition Policy, which excludes coverage for "**Loss** on account of any **Claim** brought or maintained by or on behalf of" Sun One Price."

70.   An actual and justiciable controversy exists between Federal and defendants as to whether coverage for Underlying Matters would be barred by one or more of the terms, conditions and limitations of the Post-Acquisition Policy. Entry of a declaratory judgment is necessary, appropriate and effective to resolve that controversy.

WHEREFORE, in the alternative to the relief requested in Count I above, Federal prays this Court (a) enter judgment declaring that the terms, conditions, limitations and exclusions of the Post-Acquisition Policy bar coverage for the Underlying Matters and (b) grant Federal such other and further relief as the Court may deem appropriate.

Dated: February 18, 2005

Paul Sweeney
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

David Newmann
Jeremy B. Stein
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, DC 20004
(Tel) (202) 637-5600
(Fax) (202) 637-5910

Attorneys for Plaintiff
 Federal Insurance Co.

Paul Sweeney
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                    :
                                                    :    Case No.
FEDERAL INSURANCE CO.,                              :
                                                    :
                    Plaintiff,                      :
                                                    :
          v.                                        :
                                                    :
C. BURT DUREN, R. CAREY JOHNSON,                    :
THOMAS R. KELLY, H. DANE REYNOLDS,                  :
LEONARD M. SNYDER and JOHN DOES 1-                  :
50,                                                 :
                                                    :
                    Defendants.                     :
------------------------------------------------------------------------x

## RULE 7.1 DISCLOSURE STATEMENT

Federal Insurance Company files this disclosure statement pursuant to Fed.

R. Civ. P. 7.1(a).  Federal Insurance Company is a wholly-owned subsidiary of The

Chubb Corporation, a stock company publicly traded on the New York Stock

Exchange.

Dated: February 18, 2005

Respectfully Submitted,

Paul Sweeney
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

David Newmann
Jeremy B. Stein
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, DC  20004
(Tel) (202) 637-5600
(Fax) (202) 637-5910

Attorneys for Plaintiff
Federal Insurance Co.